# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| FREDDIE J. BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. 3:12-cv-01195 |
| v. ) | Judge Sharp |
| ) | |
| TIGER MANAGEMENT GROUP, LLC ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff's complaint before this Court alleges unlawful discrimination on the basis of gender and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. (Docket No. 1). Defendant Tiger Management Group, LLC ("TMG") has filed a Motion for Summary Judgment (Docket No. 22) on all claims in the complaint. This motion, for the reasons that follow, will be granted.

## I. FACTUAL BACKGROUND

Defendant TMG is a Tennessee corporation that purchased twenty-six retail convenience stores in the Nashville area from ExxonMobile in 2010. (Docket No. 27 ¶¶ 3-4). The original members of TMG were Lyle Finley, Greg Merriman, Mike Campbell, Arnold Tackett, and Marlin Larson. (Docket No. 27 ¶ 5).

Plaintiff Freddie J. Brown is a female former employee of ExxonMobile and Defendant. She was born on May 5, 1954 and began working for ExxonMobile in 1982. By the time Defendant

1

acquired the ExxonMobile stores in July 2010, Plaintiff was working as a territory manager. (Docket No. 27 ¶¶ 1-2).

Defendant's purchase agreement with ExxonMobile required it to employ certain ExxonMobile employees, including Plaintiff and four other women--Pat Slapak, Sara Burrows, Toyia Bernales and Kathy Jennings--for the one year period following the sale. (Docket No. 41 ¶ 5). As a result, Defendant offered Plaintiff employment as a district manager and Plaintiff accepted. (Docket No. 27 ¶¶9-10).

Plaintiff's direct supervisor was TMG owner Mike Campbell, who ran operations, staffing, and overall execution of the operating plan. He also directly supervised store managers and routinely visited stores in order to provide management oversight. (Docket No. 27 ¶ 15) (Docket No. 41 ¶ 25).

In November 2010, Defendant began negotiations with ExxonMobile to purchase an additional thirty-three convenience stores in Louisiana ("Louisiana Acquisition"). (Docket No. 27 ¶¶ 16-17). Through the Louisiana Acquisition, TMG owners planned to expand operations, scale fixed overhead costs, and generate additional opportunities for employees, including Plaintiff. (Docket No. 27 ¶ 19).

In April 2011, Defendant brought in Tristan Anowar to replace Larson, who had retired, as co-owner of TMG. (Docket No. 27 ¶¶ 20-21). Anowar was given the title "Vice President of Operations," and was slated to run the company's operations in the Louisiana market if the Louisiana Acquisition was successful. (Docket No. 27 ¶¶22-23).

In May or June 2011 Defendant learned that it was unsuccessful in its bid for the Louisiana stores. (Docket No. 27 ¶ 24). At approximately the same time, Merriman reviewed the company's financial performance in anticipation of a financial report due Defendant's lender in

September 2011. (Docket No. 27 ¶ 25). Upon review of the reports, Merriman determined that the stores were underperforming and, as a result, Defendant was in danger of defaulting on its loan. (Docket No. 27 ¶¶ 27-28). The owners discussed possible solutions to these financial issues, and ultimately decided that since the transition period from ExxonMobile ownership to TMG ownership was essentially complete, the owners were in a position to eliminate middle-management employees. (Docket No. 27 ¶¶ 29-31). Campbell testified in his deposition that terminating middle management resulted in both a reduction in salary expenditures and an opportunity for the owners to directly oversee and initiate changes in business operations. (Docket No. 26-11 p. 55-57).

In July 2011, after the expiration of the one-year employee retention period required by the ExxonMobile purchase agreement, Defendant informed its three mid-level managers--Burrows, Slapak and Plaintiff-- that their positions were being eliminated. (Docket No. 27 ¶ 35). Plaintiff was told she was being discharged due to restructuring. All three terminated employees were female. Anowar took over the duties previously performed by Slapak and Campbell took over the duties previously performed by Plaintiff and Burrows. (Docket No. 27 ¶¶ 33-34, 39).

## II. ANALYSIS

A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in

3

his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, (1986). However, the nonmoving party must rely on more than "[c]onclusory assertions, supported only by Plaintiff's own opinions." Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008). Rather, Plaintiffs must "set out specific facts showing a genuine issue for trial." Harvey v. Campbell County, Tenn., 453 Fed. Appx. 557, 561 (6th Cir. 2011).

### a. Gender Discrimination

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…sex." 42 U.S.C. § 2000e-2(a)(1). An employee may prove her claim by either direct or indirect evidence of discrimination. Abdulnour v. Campbell Soup Supply Co., LLC, 502 F.3d 496, 501 (6th Cir. 2007). In this case, Plaintiff has failed to submit any evidence of direct discrimination. The Court, therefore, will analyze Plaintiff's Title VII claim under the McDonnell-Douglas burden-shifting paradigm applicable to discrimination claims proven by indirect evidence. See McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973); Abdulnour, 502 F.3d 496 at 501.

Under the McDonell-Douglas framework, Plaintiff must establish a *prima facie* case of gender discrimination by demonstrating that: "(1) she is a member of a protected class; (2) she was terminated; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class or was treated differently than a similarly situated, non-protected employee." Id. However, when an employee is terminated as part of a reduction in force ("RIF"), the employee must meet a heightened standard to prove her *prima facie* case: She must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled [her] out ... for discharge for impermissible reasons." Pierson v.

Quad/Graphics Printing Corp., 749 F.3d 530, 536-37 (6th Cir. 2014) (citing Barnes v. GenCorp, 896 F.2d 1457, 1465 (6th Cir.1990)). A RIF occurs when business considerations cause an employer to eliminate one or more positions within the company. Id. An employee is not eliminated as part of a RIF when she is replaced after her discharge; however, "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." Id.

The Court finds that Plaintiff was terminated as part of a RIF. It is undisputed that Plaintiff, who was employed in middle management, was terminated simultaneously with the rest of Defendant's middle-management employees. Defendant has also offered evidence that business considerations, including the company's underperformance and the unsuccessful bid for the Louisiana Acquisition, led to Defendant's decision to eliminate the positions.

Additionally, the Court finds that the Sixth Circuit's ruling in Slapak v. Tiger Management Group, LLC, 594 Fed. Appx. 290 (6th Cir. 2014) determinative of the RIF issue. In Slapak, the Sixth Circuit considered whether the termination of Plaintiff, Slapak and Burrows constituted a RIF in the context of another employment discrimination claim against Defendant. Id. The Sixth Circuit affirmed the trial court's ruling that Defendant's elimination of middle-management established a RIF. Id.

Moreover, Plaintiff admits that Campbell, who had previously been running operations, staffing, and overall execution of the operating plan in his role as co-owner of TMG, acquired both Plaintiff's and Burrows' job duties after their positions were eliminated.[1] Under these

---

[1] Plaintiff speculates that other individuals, including Lemming, Eric Black and Tim Howard, might have taken over some of Plaintiff's job responsibilities; however, she admits that she doesn't have any actual knowledge regarding this matter. (Docket No. 27 ¶ 40) (Docket No. 26-2 p. 4). Speculation does not constitute facts sufficient to

circumstances, the Court finds that Plaintiff was not "replaced" by Campbell; rather, Campbell took on Plaintiff's duties in addition to his other responsibilities. Accordingly, it is determined that Plaintiff's termination was the result of a RIF.

Because Plaintiff was terminated as part of a RIF, Plaintiff must prove that she was treated differently than similarly situated employees in order to establish her *prima facie* case. Plaintiff must also produce some additional evidence demonstrating that her status in a protected class was a factor in her termination. See Williams v. Tyco Elec. Corp., 161 Fed. Appx. 526, 535 (6th Cir. 2006).

Plaintiff fails to meet her burden. In support of her *prima facie* case, Plaintiff asserts that Campbell called female employees "honey," "babe," or "your girl." While these phrases may evidence Campbell's attitude toward women, they do not illustrate that Plaintiff's gender motivated her termination. Plaintiff also contends that Eric Black, a male employee of an affiliated company, was not required to attend "night rides" with Campbell to check on stores, whereas the female employees were expected to attend. However, this evidence, by itself, is insufficient to show that Plaintiff's gender was a factor in her termination. Notably, Plaintiff admits that males Black, Lemming and Campbell were part of the "night ride" group, and Black attended two out of five "night rides." (Docket No. 41 ¶¶ 33, 37). Finally, Plaintiff testified in her deposition that she "felt like" Campbell's micromanagement of Plaintiff occurred because

---

withstand a motion for summary judgment. See Brasfield v. Martinrea Fabco Automotive Structures (USA), Inc., 2013 WL 2644410 at *3 (citing Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990)) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment.") Moreover, even if it is assumed Plaintiff's speculation is true, she would still lack proof that she was replaced because both Lemming and Black were existing employees already performing related work when they allegedly took over some of Plaintiff's job responsibilities. See Pierson, 749 F.3d at 536-37 (finding that a person is not replaced when the work is redistributed among other existing employees already performing related work).

she was female, and "to her knowledge," Campbell did not engage in this management style with male employees. (Docket No. 26-2 p. 4). However, Plaintiff offers no concrete facts showing that Plaintiff's management style with males differed from his management style with females. Plaintiff's assertions amount to speculation and subjective belief. As a result, Plaintiff's evidence is insufficient to create a genuine issue of material fact. Brasfield v. Martinrea Fabco Automotive Structures (USA), Inc., 2013 WL 2644410 at *3 (citing Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990)) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment.")

Even if the Court assumes that Plaintiff can meet her *prima facie* burden, her Title VII claim must be dismissed because she has failed to demonstrate pretext. Under the McDonell-Douglas framework, once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the discharge. Abdulnour, 502 F.3d 496 at 502. In this case, Defendant satisfied its burden by asserting that Plaintiff was terminated because of a RIF. Once the employer has offered a legitimate, non-discriminatory reason for the plaintiff's termination, "the burden shifts back to Plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id.

Plaintiff contends that Defendant's termination of female employees and its active recruitment of male employees is evidence that Defendant's legitimate, nondiscriminatory reason is mere pretext for discrimination. The fact that three female employees were terminated, however, does not show pretext because Defendant's legitimate reason for termination is the elimination of middle-management and all middle-management employees were female. Thus,

the termination of all female, middle-management employees is consistent with Defendant's nondiscriminatory basis for the discharges.

Plaintiff's contention that Defendant's alleged "recruitment" of male employees--including Anowar, Mark Thompson and Blake Harris--"[d]uring the first year after purchase of the Exxon locations" shows pretext is unconvincing. (Docket No. 41 ¶ 28). Plaintiff offers no evidence that these male employees were hired after the business concerns giving rise to the RIF materialized.[2] On the contrary, Plaintiff's contention that they were recruited during the first year after the July 2010 purchase of the ExxonMobile stores creates a likelihood that they came on board before Defendant learned of its unfavorable economic developments in May or June of 2011. Thus, their hiring is not persuasive to show that the RIF and Defendant's motivations behind the RIF have no basis in fact.

Even assuming, *arguendo,* that the male employees were hired after Defendant's business concerns arose, the Court finds that Plaintiff fails to carry her burden. Specifically, Plaintiff has failed to show that the "recruitment" of Anowar, Thompson or Harris contradicts Defendant's reasons for eliminating middle-management. For example, Defendant contends that the termination of middle management employees took place, in part, to facilitate changes in business operations which could be accomplished by direct management from the owners. It is undisputed, however, that the "recruited" male employees were not hired to perform middle-management job duties. Therefore, their hiring does not show inconsistency with the RIF.

---

[2] In the case of Anowar, Plaintiff admits that Anowar was brought in as co-owner of TMG before Defendant knew the Louisiana Acquisition was unsuccessful. (Docket No. 41 ¶¶ 56-57). Therefore, Anowar's involvement with TMG is irrelevant not only because he was brought in before the business concerns giving rise to the RIF materialized, but also because his position as co-owner of the company is not comparable to Plaintiff's employment in middle-management.

Additionally, Plaintiff alleges that Defendant's employment of Tim Howard in the fall of 2012 to take on some district management and merchandising responsibilities shows that the RIF is a pretext for discrimination. However, this argument is not convincing. Notwithstanding the fact that the allegation is unsubstantiated and unlikely to be admissible at trial[3], the Court finds that Howard's employment, purportedly initiated over a year after Plaintiff's termination, does not show that Defendant's legitimate, nondiscriminatory reason for termination has no basis in fact. The extended period of time between Plaintiff's termination and Howard's hiring significantly lessens the allegation's relevancy because the economic and business concerns that gave rise to the RIF may have changed or disappeared altogether.

To the extent that Plaintiff's pretext argument is based on a showing that recruitment of male employees evidences a culture of gender discrimination and a preference for male employees, the Court finds that Plaintiff has failed to raise a genuine issue of material fact regarding this matter. Plaintiff has offered no evidence related to the amount of female employees hired during the relevant time period, the relative qualifications of employees hired or any information regarding the applicant pool. The fact that Defendant has hired some male employees over the course of its management of the Nashville stores does not, by itself, raise an inference of a discriminatory pattern of hiring. See Foust v. Metropolitan Sec. Services, Inc., (citing Simpson v. Midland-Ross Corp., 823 F.2d 937, 942-43 n. 7 (6th Cir. 1987) (sufficient evidence regarding an employer's alleged discriminatory pattern of hiring includes the relative qualifications of the

---

[3] Although Slapak asserts in her deposition that she received an e-mail from another employee "showing where that Tim Howard had been hired to take on district-manager as well as merchandising responsibilities" (Docket No. 26-6 p. 13) in August or September of 2012, Plaintiff has failed to produce the e-mail. Plaintiff also fails to describe how the e-mail, which was sent over a year after both Plaintiff and Slapak stopped working at TMG from a person who no longer worked for TMG, proves what Plaintiff purports it does.

9

employees hired and the positions to which they were assigned and vital information regarding the pool of applicants).

Finally, Plaintiff contends that the 25% salary increases experienced by Anowar and Campbell since the acquisition of the ExxonMobile stores illustrate that Defendant's legitimate, nondiscriminatory reason for termination (financial concerns) has no basis in fact. However, Plaintiff has failed to show precisely when Campbell and Anowar received the salary increases. If they received the increases before the business concerns giving rise to the RIF materialized, the salary increases are not persuasive to show that the RIF and Defendant's motivations behind the RIF have no basis in fact. Similarly, if they received them at a significantly later time following Plaintiff's termination, the salary increases lack relevance. Further, the salary increases are not sufficient to cast doubt on the veracity of Defendant's legitimate, nondiscriminatory reason for termination. Plaintiff has not alleged or shown that the salary increases negated the financial benefits gained from the elimination of three middle-management employees. Additionally, the fact that Anowar and Campbell experienced 25% increases in salary does not call into question Defendant's other reason for eliminating middle-management, namely, to allow TMG owners to directly implement operational improvements for long term financial gains.

Accordingly, Plaintiff has failed to present evidence that, when viewed in a light most favorable to her, creates a genuine issue of material fact with regard to both her *prima facie* case and the issue of pretext. As a result, Plaintiff's Title VII claim will be dismissed.

### b. ADEA Claim

The ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

age." 29 U.S.C. § 623(a). An employee can establish an age discrimination case by either direct or circumstantial evidence. Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 410 (6th Cir. 2008). To establish a *prima facie* case of age discrimination using circumstantial evidence, the plaintiff must show that 1) she was a member of the protected class, 2) she was subject to an adverse employment action, 3) she was qualified for the position, and 4) she was replaced by a younger worker or treated differently from similarly situated employees outside the protected class. Id. at 349. If an employee is terminated as part of a RIF, however, the employee must produce "additional direct, circumstantial or statistical evidence that age was a factor in his termination." Williams v. Tyco Elec. Corp., 161 Fed. Appx. 526, 535 (6th Cir. 2006) (citing LaGrant v. Gulf Western Mfg. Co., 748 F.2d 1087, 1091 (6th Cir. 1984)).

Plaintiff has failed to establish a claim of age discrimination under the ADEA. Specifically, Plaintiff does not offer any evidence that a younger employee replaced Plaintiff, or that Defendant treated younger, similarly–situated employees differently than her. Neither Plaintiff's Response to Defendant's Motion for Summary Judgment, nor her Statement of Undisputed Material Facts mentions the age of any owner or employee of Defendant. In fact, the only evidence Plaintiff offers to show that she was discriminated against due to her age are conclusory allegations based on Plaintiff's subjective belief that Defendant engages in age-based discrimination. For example, Plaintiff alleges her belief that "the store managers and assistant managers are discriminated against by upper management on the basis of their age," and asserts that she "never reported any harassment based on either age or gender to any of the TMG owners…because she didn't feel she could." (Docket No. 41 ¶¶ 67, 70). These allegations are insufficient to withstand a motion for summary judgment. See Alexander v. CareSource, 576

11

F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment.")

Furthermore, even if the Court assumes that Plaintiff's ADEA claim is based on the allegation that Campbell replaced her, the Court must find for Defendant. Campbell was born on June 7, 1954; therefore, he is only one month younger than Plaintiff. (Docket No. 27 ¶ 41). In age discrimination cases, a plaintiff must prove that she was replaced by a significantly younger person. Grosjean v. First Energy Corp., 349 F.3d 332, 335 (6th Cir. 2003) (citing Kline v. Tenn. Valley Auth., 128 F.3d 337, 342 (6th Cir. 1997)). Because Campbell is not significantly younger than Plaintiff, Plaintiff fails to make out her *prima facie* case of age discrimination. See Blizzard v. Marion Technical Coll., 698 F.3d 275, 284 (6th Cir. 2012) (citing Grosjean, 349 F.3d at 335) ("[I]n the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant.")

Finally, as explained above, Plaintiff was terminated as part of a RIF. As such, she is required to produce additional evidence that age was a factor in her termination in order to establish her *prima facie* case. Plaintiff has failed to produce any such evidence. Accordingly, Plaintiff's ADEA claim will be dismissed.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted as to Plaintiff's ADEA claim and Title VII claim.

An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE